IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-778

| ECAPITAL RE CORP., | ) | |
|---|---|---|
| Plaintiff, | ) | **COMPLAINT** |
| vs. | ) | Judgment on Guaranty |
| JOHN ONSON, | ) | |
| Defendant. | ) | |

Plaintiff eCapital RE Corp. brings this Complaint against the Defendant John Onson for payment of monies due under a Guaranty Agreement executed by Defendant as security for debts owed by Rudd Island Holdings LLC. In support of its claims, Plaintiff alleges the following:

**INTRODUCTION**

1. On February 19, 2020, Rudd Island Holdings LLC ("Rudd Island"), a Rhode Island limited liability company, entered into a Purchase and Sale Agreement to purchase a skilled nursing facility located at 100 Wampanoag Trail, Riverside, Rhode Island, 02915 known as "Elderwood at Riverside" (the "Project")

2. To finance its purchase of the facility, Rudd Island entered into a Loan Agreement with CNHF Fund II, L.P. ("CNHF") for the principal amount of $3,825,000.00 on April 27, 2020. A copy of the Loan Agreement is attached herewith as **Exhibit A**. The Loan Agreement was secured by a Mortgage and Security Agreement encumbering the real property, fixtures, and personalty of the Project. A copy of the Mortgage and Security Agreement is attached herewith as **Exhibit B**.

3. As a condition precedent to issuance of the loan, CNHF required the members of Rudd Island, Levi Rudd, Louis Kass, and Defendant John Onson (collectively the "Guarantors") to enter into separate Guaranty Agreements, which were executed by each of the Guarantors on April 27, 2020. A copy of the Guaranty Agreement between the Defendant and CNHF is attached as **Exhibit C**.

4. Following execution of the Loan Agreement, Mortgage and Security Agreement, and Guaranty Agreements, CNHF converted from a Limited Partnership to a Corporation pursuant to Title 8 § 265 of the Delaware Code. As part of this conversion, CNHF changed its name to eCapital RE Corp. A copy of the Certificate of Conversion duly filed with the Delaware Secretary of State is attached as **Exhibit D**. In accordance with Del. Code tit. 8 § 265(f), eCapital RE Corp. is deemed to be the same entity as CNHF and, therefore, holds all rights, privileges, and powers previously held by CNHF. Both CNHF and eCapital RE Corp. are, hereinafter, referred to interchangeably as "Plaintiff" or "Lender."

5. As set forth more fully below, Rudd Island and its affiliate Island Health and Rehab, LLC ("Island Health") breached several material terms of the Loan Agreement and the Mortgage and Security Agreement including failing to obtain required licensure, mismanaging the facility to the point the State of Rhode Island suspended the Project's ability to admit new patients, performing unpermitted renovations to the real property in violation of Rhode Island law, abandoning the Project, and allowing the real property to fall into disrepair which ultimately led to the City of East Providence appointing a receiver over the property.

6. As set forth more fully below, Rudd Island and Island Health's officers, employees, agents, or other representatives breached several material terms of the Loan Agreement and Mortgage and Security Agreement including but not limited to making false representations and

2

Case 3:24-cv-00778-FDW-SCR     Document 1     Filed 08/27/24     Page 2 of 13

warranties regarding the status of licensure, the physical condition of the real property, fixtures, and personalty at the Project, failing to take necessary actions to prevent offsets against payment of accounts receivable, and receiving distributions from Island Health and Rudd Island while in default of the Loan Agreement and Mortgage and Security Agreement.

7. Rudd Island and Island Health's breaches of material terms of the Loan Agreement and Mortgage and Security Agreement also constitute breaches of the terms of the Guaranty Agreements between the Guarantors and Lender. Pursuant to the terms of the Guaranty Agreement, Lender issued a Demand for Payment on Guaranties to the Defendant on August 10, 2023, demanding payment of the outstanding loan balance of $4,640,832.96. A copy of the Demand for Payment on Guaranties issued to the Defendant is attached herewith as **Exhibit E**.

8. To date, Defendant has refused to pay the amounts due under the Guaranty Agreement.

## JURISDICTION AND VENUE

9. Plaintiff is a corporation formed and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

10. Defendant John Onson is a citizen and resident of Mecklenburg County located in the State of North Carolina.

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant John Onson and the amount in controversy exceeds the sum of $75,000.00.

12. This Court has personal jurisdiction over Defendant because he is a citizen and resident of the State of North Carolina and because Plaintiff's claims against Defendant arise from a personal guaranty to be performed in whole or in part within the State of North Carolina.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the sole Defendant in this action resides within Mecklenburg County, North Carolina.

## STATEMENT OF FACTS

14. On February 19, 2020, Rudd Island entered into a Purchase and Sale Agreement to acquire the Project from 100 Wampanoag Trail, LLC.

15. Concurrently with the Purchase and Sale Agreement, Rudd Island's affiliate Island Health entered into an Operations Transfer Agreement with 100 Wampanoag Trail Operating Company, LLC ("WTOC"). A copy of the Operations Transfer Agreement is attached herewith as **Exhibit F**. The Operations Transfer Agreement permitted Island Health to temporarily continue business operations at the Project for 180 days under 100 Wampanoag Trail Operating Company, LLC's licenses and permits pending Island Health obtaining its own licenses and permits.

16. To finance the purchase, Rudd Island entered into a Loan Agreement with Lender, secured by a Mortgage and Security Agreement. As a condition precedent to issuing the loan and as further security for the loan, Lender required Rudd Island's members, Levi Rudd, Louis Kass, and Defendant, to make personal guarantees for the loan amount.

17. Rudd Island executed the Loan Agreement and the Mortgage and Security Agreement, and the Guarantors executed their respective individual Guaranty Agreements, on April 27, 2020. **Exhibit A**, **Exhibit B**, **Exhibit C**.

18. Island Health failed to obtain its own licenses and permits to operate the Project within 180 days of entering the OTA as required, but nonetheless continued to operate the Project under WTOC's licenses and permits.

19. Rudd Island and Island Health not only materially concealed their failure to obtain their own licenses and permits to operate the Project, but on multiple occasions made false and

materially misleading representations and warranties to Lender regarding the status of their applications for the requisite licenses and permits.

20.  In addition to failing to obtain its own licenses to operate the Project, Island Health's management of the Project was poor and in late March 2022 the State of Rhode Island suspended the Project's ability to admit new patients. Neither Rudd Island nor Island Health notified Lender that the Project could no longer admit new patients as required by the Loan Agreement; Lender was only made aware of this development when it was notified by WTOC, the prior operator of the Project.

21.  On March 10, 2022, the Department of Public Works for the City of East Providence, Rhode Island issued a Notice of Violation relating to construction work that was ongoing at the Project. The Notice found that the work was being performed by unregistered contractors and without the proper permits in violation of Rhode Island law. Rudd Island was required to meet various criteria for the Project to remain open and correct all deficiencies with 30 days of receipt of the Notice. A copy of the Notice is attached herewith as **Exhibit G**.

22.  Based upon Island Health's failure to obtain the required licenses and permits, Island Health's poor management of the Project, and the State of Rhode Island prohibiting the Project from admitting new patients, WTOC terminated the agreements that allowed Island Health to operate the Project under WTOC's licenses and permits on or about March 16, 2022. Because Island Health and Rudd Island had failed to obtain their own licenses and permits, once WTOC terminated the agreements Rudd Island and Island Health were not legally permitted to operate the Project. Neither Rudd Island nor Island Health notified Lender that WTOC had terminated its agreements, or that they were legally prohibited from operating the Project. Instead, Rudd Island and Island Health continued to materially conceal and misrepresent to Lender their failure to obtain

the required licenses and permits, their poor management of the Project, and the prohibition on admitting new patients in order to continue benefiting from the Guaranty Agreement to the detriment of Lender.

23. On August 2, 2022, the Department of Public Works for the City of East Providence, Rhode Island issued a Second Notice of Violation to Rudd Island. The Second Notice, a copy of which is attached herewith as **Exhibit H**, states that the Project was in violation of the State of Rhode Island Building Code, that no further notice would be provided, and that Rudd Island must correct violations by August 12, 2022.

24. In early 2023, the City of East Providence filed a verified petition for appointment of a temporary receiver over the Project, a copy of which is attached as **Exhibit I**. The petition asserts that the Project had been abandoned and had become a public nuisance as defined by Rhode Island law. The petition further alleged that:

    a. Rudd Island and Island Health had left the property vacant for a protracted period of time;

    b. the grounds were not maintained, the interior of the structure was unsound, and violations of property maintenance and minimum housing standards potentially existed at the property; and

    c. the property suffered from unrepaired vandalism.

25. On March 2, 2023, the City of East Providence Municipal Court issued an order appointing a Temporary Receiver over the Project. A copy of the Court's Order is attached herewith as **Exhibit J**.

26. On numerous occasions, Rudd Island and Island Health made false and materially misleading representations and warranties relating to the physical condition of the Project. Rudd

Island and Island Health made such false and materially misleading representations and warranties relating to the physical condition of the Project to materially conceal their abandonment of the Project and default under the Guaranty Agreement.

27. Neither Rudd Island nor Island Health notified Lender of the poor physical condition of the real property associated with the Project, the Notices of Violations, that it had abandoned the Project, or that a petition for appointment of a receivership over the property had been filed. To the contrary, Rudd Island repeatedly assured Lender that the Project was in good condition.

28. Lender did not discover the true condition of the property or that Rudd Island and Island Health had abandoned the Project until WTOC terminated the OTA and began working with the State of Rhode Island to shut down the building.

## CAUSE OF ACTION FOR JUDGMENT ON GUARANTY

29. Plaintiff incorporates by reference, as if stated verbatim herein, the allegations in the above-numbered paragraphs.

30. On April 27, 2020, Rudd Island entered into the Loan Agreement whereby Plaintiff agreed to make a loan in the principal amount of $3,825,000.00 to Rudd Island subject to the terms and conditions of the Loan Agreement. **Exhibit A**.

31. In consideration of the Loan Agreement, Rudd Island executed a Mortgage and Security Agreement which encumbered the real property, fixtures, and personalty of the Project dated April 27, 2020. **Exhibit B**.

32. In further consideration of the Loan Agreement, Defendant executed a Guaranty Agreement dated April 27, 2020, whereby Defendant personally, absolutely, and unconditionally guaranteed:

a. That Rudd Island would not violate portions of the Loan Agreement relating to the deposit of account collections;

b. That Defendant would not take any distributions if there was an event of default as defined under the Loan Agreement or if the distribution would constitute a violation of the financial covenants in the Loan Agreement;

c. That Defendant would not take any action or fail to take an action which action or inaction would result in creation of a lien or offset against Rudd Island's accounts receivable that takes priority over Plaintiff's interests;

d. That no officer, employee, agent, or other representative of Rudd Island would commit fraud, deceit, deception, or criminal acts in their dealings with Lender on behalf of Rudd Island;

e. That Rudd Island would not (a) file a petition under any insolvency statute, (b) make a general assignment for the benefit of Creditors, (c) commence a proceeding for the appointment of a receiver, trustee, liquidator, or conservator of itself or of the whole or any substantial part of its property, or (d) file a petition seeking reorganization or liquidation or similar relief under any Debtor Relief Law or any other applicable law or statute. **Exhibit C**.

33. Under the express terms of the Guaranty Agreement, Defendant personally, absolutely, and unconditionally guaranteed to pay to Lender all losses, damages, and expenses resulting from events set forth in Paragraph 32 (a), (b), or (c) above. **Exhibit C**.

34. Under the express terms of the Guaranty Agreement, Defendant personally, absolutely, and unconditionally guaranteed to pay Lender all of Rudd Island's obligations under the Loan Agreement if the events described in Paragraph 32 (d) or (e) occurred. **Exhibit C.**

35. The Plaintiff is the owner and holder of the Loan Agreement, Mortgage and Security Agreement, Guaranty Agreements, and all other documents at issue in this matter.

36. Under the express terms of Section VII of the Loan Agreement several Events of Default have occurred:

    a. Rudd Island and Island Health made several materially false, misleading, and untrue statements regarding their financial condition and the physical condition of real property, fixtures, and personalty at the Project (**Exhibit A** at 7.1(b));

    b. An "Event of Default" occurred under the Operator Agreement (**Exhibit A** at 7.1(e));

    c. A court of competent jurisdiction entered an order appointing a receivership over the real property of the Project, which constitutes a substantial part of Rudd Island's properties (**Exhibit A** at 7.1(j));

    d. The State of Rhode Island instituted a ban on admissions of new patients generally (**Exhibit A** at 7.1(n)(ii))

37. Upon information and belief, Defendant continued to receive distributions in violation of the Guaranty Agreement despite the occurrence of several Events of Default as that term is defined within the Loan Agreement.

38. Under the express terms of the Guaranty Agreement, because Defendant took distributions following an Event of Default, Defendant is personally, absolutely, and unconditionally liable for all Plaintiff's losses, damages, and expenses, including attorney's fees, incurred in connection with this action.

39. Rudd Island and its officers, directors, members, or agents, including Defendant, committed fraud against Plaintiff:

   a. Rudd Island's officers, directors, members, or agents made representations of fact concerning the physical condition of the real property, fixtures, and personalty of the Project, Rudd Island and Island Health's financial condition, and Island Health's progress towards obtaining the necessary licenses and permits to operate the Project. These representations were made to, among others, Lender's employee Bobby Davoudian, a portfolio manager responsible for overseeing the loan and Alexander Frame, Lender's outside counsel;

   b. Rudd Island and Island Health's representations or representations made or on their behalf were false: Rudd Island and Island Health falsely claimed the real property, fixtures, and personalty of the Project were in satisfactory condition and/or failed to accurately report the condition of these items with the intent of misleading Lender, materially misrepresented their financial condition, and falsely claimed Island Health was making progress towards obtaining the necessary licenses and permits to operate the Project;

   c. Rudd Island and Island Health's false representations were material under the terms of the Loan Agreement, Mortgage and Security Agreement, and Guaranty Agreement and material to the continued business relationship between Lender, Rudd Island, Island Health, and the Guarantors;

d. Rudd Island, Island Health, and their respective officers, directors, members, and agents knew, at the time the representations were made, that they were false;

e. Rudd Island and Island Health intended Lender to accept the representations as true and act upon them as if they were true. The representations were, in many instances, reports and other information required under the terms of the Loan Agreement, Mortgage and Security Agreement, and Guaranty Agreement which Rudd Island and Island Health submitted with the express intent that Lender accept the representations as true and accurate;

f. Lender was not aware the representations were false. In fact, Rudd Island and Island Health actively concealed the true condition of the Project and their respective financial conditions from Plaintiff;

g. Plaintiff relied upon the representations to continue the Loan Agreement and otherwise continue its business relationship with Rudd Island, Island Health, and the Guarantors;

h. Lender was entitled to, and was in fact expected to, rely upon the representations made by Rudd Island and Island Health under the terms of the Loan Agreement and Mortgage and Security Agreement;

i. As a result of Rudd Island and Island Health's false representations, Plaintiff has suffered consequent and proximate injury including but not limited to loss of value in the real property, fixtures, and personalty securing the Loan Agreement and legal expenses and fees.

40. Rudd Island and Island Health or its officers, employees, agents, or other representatives intentionally deceived Plaintiff as to material facts pertaining to the Loan Agreement, Mortgage and Security Agreement, and other pertinent documents by making false and misleading statements and intentionally omitting or withholding material facts from Lender.

41. Because Rudd Island and Island Health's officers, employees, agents, or other representatives engaged in fraud, deceit, and deception in their dealings with Plaintiff, Defendant is personally, absolutely, and unconditionally liable to Plaintiff for all Rudd Island's obligations under the Loan Agreement, including accelerated repayment in full of the outstanding balance of the loan as expressly agreed to in the Guaranty Agreement.

42. As stated on the Verification of Account, a copy of which is attached herewith as **Exhibit K**, the outstanding loan balance due and owing from Defendant is $5,375,780.93 plus interest and fees from May 31, 2024, subject to setoff for any amounts recovered from the sale of secured property pursuant to the Mortgage and Security Agreement and amounts recovered from other Guarantors.

43. Plaintiff reserves its right to assert any other applicable basis of default under the terms of the Loan Agreement, Mortgage and Security Agreement, Guaranty Agreements, or any other applicable loan documents.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pays for judgment against Defendant in a sum-certain amount of $5,375,780.93, subject to setoff for any amounts recovered from the sale of secured property pursuant to the Mortgage and Security Agreement and amounts recovered from other Guarantors, together with accruing interest, attorneys' fees and costs of this action, and for such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 27th day of August, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Alexandra M. Bradley*
Alexandra M. Bradley
N.C. Bar No. 54872
J. Matthew Gorga
N.C. Bar No. 56793
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Ph: (919) 329-3800
Fax: (919) 329-3799

*Attorneys for Plaintiff eCapital RE Corp.*